UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LARRY RICHARDS,<br><br>    Plaintiff,<br><br>v.<br><br>MARK ESSICK, et al.,<br><br>    Defendants. | Case No. 22-cv-04652-LB<br><br>**ORDER AUTHORIZING SERVICE AND IDENTIFYING POTENTIAL ISSUES** |

**INTRODUCTION**

The plaintiff, who is representing himself and proceeding in forma pauperis, sued Sonoma County jail staff (among others) on the grounds that while he was in custody, they denied him phone calls required by California Penal Code § 851.5 and denied him access to his medications, all in violation of federal civil-rights laws allowing him the calls, accommodation for his disabilities, and constitutionally adequate medical care. He also asked for a temporary restraining order to prevent the destruction of video evidence from the cameras outside his cell.[1] Before directing the United States Marshal to serve the defendants with the complaint, the court must screen it for minimal legal viability. 28 U.S.C. § 1915(e)(2)(B). This order authorizes service on

---

[1] Compl. – ECF No. 1 at 1–3; Mot. for TRO – ECF No. 4. Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

ORDER – No. 22-cv-04652-LB

the Sonoma County defendants named in ECF No. 1 and provides additional guidance to the plaintiff, who may supplement his complaint by October 10, 2022, in a standalone filing to address the potential deficiencies set forth in the last section of the order.

## STATEMENT

On August 8, 2022, while the plaintiff was assisting his caregiver with legal matters, the two "began arguing over their situation and being late." The plaintiff became "loud and so persons in the area called the police."[2] He was arrested and detained in the Sonoma County Regional Adult Detention Center for eight hours before being released on his own recognizance. His caregiver "dropped the charges instantly, while [he] was being transported" from the place of arrest.[3]

During the detention, the plaintiff — who is "medically fragile" and takes more than twenty "life essential medications" — repeatedly asked jail staff for his medications because his heart was palpitating and he had a migraine headache. The staff denied him access to medications, and he eventually vomited due to the migraine. Less than twenty minutes before his release, staff conducted a medical evaluation, but they did so only because they "needed the paperwork in their files to give the appearance of proper process." This timeline means that he was denied essential medications for over ten hours in total (including eight hours in custody).[4]

The plaintiff repeatedly asked for access to a phone to try to get access to his medications. Staff denied his requests.[5] In his "seventh hour of incarceration," someone gave him "an alleged code that would operate his phone," but the code did not work.[6] After the code failed, the plaintiff

---

[2] Compl. – ECF No. 1 at 2.

[3] *Id.* at 2–3.

[4] *Id.* at 3.

[5] *Id.*

[6] Mot. for TRO – ECF No. 4 at 3; Telephone Instructions, Ex. 1 to *id.* – ECF No. 4 at 5. Some of the filings may not be subject to judicial notice or consideration under the incorporation-by-reference doctrine. *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005); *Lee v. City of Los Angeles*, 250 F.3d 668, 689–90 (9th Cir. 2001). To the extent that the court references those filings, it is for context or to give the plaintiff guidance for any amended complaint.

"vociferously complained of still being denied phone calls[,] and nothing was done — in fact [the] defendants laughed."[7]

Also during the detention, staff members refused to give the plaintiff a wheelchair and cracked his cell window by repeated pounding.[8] In addition, custodial staff "us[ed] extreme force upon [the] plaintiff and lock[ed] him alone into maximum security."[9] And when the detention-center staff converted the plaintiff's cash into a credit card, they effectively prevented him from taking a bus back to where he lives after his release.[10]

The defendants named in the complaint are (1) Sonoma County Sheriff Mark Essick, (2) the people of Sonoma County, (3) Sonoma County, (4) the Sonoma County Regional Adult Detention Center, (5) all staff at the detention center, (6) 5,000 Doe defendants, (7) the "California agency that supervises penal conduct," and (8) the "California agency [that] supervises sheriffs and jails."[11] Additional defendants identified in the caption of a later motion for a hearing are (9) Brandon Cutting, Professional Standards Lieutenant, (10) James Naugle, Assistant Sheriff, Law Enforcement Division, (11) Eddie Engram, Assistant Sheriff, Detention Division, and (12) Heidi Keith, Chief of Financial and Administrative Services.[12] The plaintiff sues the defendants in their individual and official capacities.[13]

Liberally construed, the plaintiff's claims are as follows: (1) disability discrimination under the Americans with Disabilities Act (ADA), (2) a denial of constitutionally adequate medical care, (3) a violation of his federal civil rights for denying him his state-mandated phone calls under California Penal Code § 851.5, and (4) intentional infliction of emotional distress.[14] The plaintiff asks the court to refer the matter for a criminal prosecution to the U.S. Attorney's Office for the

---

[7] Telephone Instructions, Ex. 1 to *id.* – ECF No. 4 at 5; Mot. for TRO – ECF No. 4 at 3.
[8] Exs. to Mot. for TRO – ECF No. 7 at 6.
[9] *Id.* at 3.
[10] *Id.* at 6.
[11] Compl. – ECF No. 1 at 1.
[12] Mot. for Hr'g – ECF No. 10 at 2.
[13] Compl. – ECF No. 1 at 1; Mot. for Hr'g – ECF No. 10 at 1–2.
[14] Compl. – ECF No. 1 at 2–3.

alleged violation of California Penal Code § 851.5.[15] That statute makes it a misdemeanor to intentionally deny an arrested person the rights under the statute. Cal. Penal Code § 851.5(i). He also moved for a temporary restraining order for the preservation of video evidence from the cameras outside his cell. He provided a copy of his preservation notice to the jail.[16]

The court has federal-question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction over the state claims under 28 U.S.C. § 1367. The plaintiff consented to magistrate-judge jurisdiction.[17]

## STANDARD OF REVIEW

A complaint filed by a person proceeding in forma pauperis under 28 U.S.C. § 1915(a) is subject to a mandatory, sua sponte review and dismissal by the court if it is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *Calhoun v. Stahl*, 254 F.3d 845, 845 (9th Cir. 2001); *Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc). Under § 1915(e)(2), a court reviewing an in forma pauperis complaint must rule on its own motion to dismiss before directing the United States Marshals to serve the complaint under Federal Rule of Civil Procedure 4(c)(2). *Lopez*, 203 F.3d at 1126–27. "The language of § 1915(e)(2)(B)(ii) parallels the language of Federal Rule of Civil Procedure 12(b)(6)." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). The statute "is designed largely to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits that paying litigants generally do not initiate because of the costs of bringing suit." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

"Frivolousness" under § 1915(e) and failure to state a claim under Rule 12(b)(6) are distinct concepts.

"A complaint . . . is frivolous where it lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992). The definition of frivolousness "embraces not only the

---

[15] *Id.* at 2; Mot. for Hr'g – ECF No. 10 at 3.

[16] Mot. for TRO – ECF No. 4; Exs. to Mot. for TRO – ECF Nos. 7, 9, 11; Mot. for Hr'g – ECF No. 10; Preservation Notice & Resp. – ECF No. 10-1 at 11, 14.

[17] Consent – ECF No. 3.

inarguable legal conclusion, but also the fanciful factual allegation." *Neitzke*, 490 U.S. at 325. When determining whether to dismiss a complaint as "frivolous" under 28 U.S.C. § 1915(e)(2)(B)(i), the court has "the unusual power to pierce the veil of the complaint's factual allegations," meaning that the court "is not bound, as it usually is when making a determination based solely on the pleadings, to accept without question the truth of the plaintiff's allegations." *Denton*, 504 U.S. at 32. Frivolous claims include "claims describing fantastic or delusional scenarios, claims with which federal district judges are all too familiar." *Id.* "An in forma pauperis complaint may not be dismissed . . . simply because the court finds the plaintiff's allegations unlikely." *Id.* at 33. But "a finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible, whether or not there are judicially noticeable facts available to contradict them." *Id.* Frivolous litigation "is not limited to cases in which a legal claim is entirely without merit. . . . [A] person with a measured legitimate claim may cross the line into frivolous litigation by asserting facts that are grossly exaggerated or totally false." *Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047, 1060–61 (9th Cir. 2007).

Under Rule 12(b)(6) and § 1915(e)(2)(B), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Rule 8(a)(2) requires that a complaint include a "short and plain statement" showing the plaintiff is entitled to relief. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The complaint need not contain "detailed factual allegations," but the plaintiff must "provide the grounds of his entitlement to relief," which "requires more than labels and conclusions"; a mere "formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555 (cleaned up).

In determining whether to dismiss a complaint under Rule 12(b)(6), the court is ordinarily limited to the face of the complaint. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002). Factual allegations in the complaint must be taken as true and reasonable inferences drawn from them must be construed in favor of the plaintiff. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). The court cannot assume, however, that "the [plaintiff]

can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

Federal courts must construe pro se complaints liberally. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Hearns v. Terhune*, 413 F.3d 1036, 1040 (9th Cir. 2005). A pro se plaintiff need only provide defendants with fair notice of his claims and the grounds upon which they rest. *Hearns*, 413 F.3d at 1043. He need not plead specific legal theories so long as sufficient factual averments show that he may be entitled to some relief. *Id.* at 1041.

When dismissing a case for failure to state a claim, the Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez*, 203 F.3d at 1130 (cleaned up).

**ANALYSIS**

There are at least four claims: a violation of the ADA, a denial of constitutionally adequate medical care, denial of access to state-mandated phone calls, and intentional infliction of emotional distress. Liberally construing the complaint, as the court must with a pro se plaintiff, the plaintiff pleaded sufficient factual allegations to survive the court's frivolousness review and to show that he may be entitled to some relief. The court thus authorizes service on the County defendants. The fifth section addresses some additional issues with the complaint.

**1. ADA Claim**

Under Title II of the ADA, "[n]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. The ADA prohibits public entities from discriminating against the disabled and also prohibits public entities from excluding the disabled from participating in or benefitting from a public program, activity, or service "solely by reason of disability." *Lee v. City of Los Angeles*, 250 F.3d 668, 690–

691 (9th Cir. 2001). "Discrimination includes a failure to reasonably accommodate a person's disability." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds*, 135 S. Ct. 1765, 1768–69 (2015).

A qualifying disability can be an impairment that substantially limits one or more major life activities. 42 U.S.C. § 12102(1)(A) & (2)(A). "Major life activities" include "the operation of a major bodily function, including but not limited to, functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine, and reproductive functions." *Id.* § 12102(2)(B).

"To recover monetary damages under Title II of the ADA, a plaintiff must prove intentional discrimination on the part of the defendant." *Duvall v. Cnty. of Kitsap*, 260 F.3d 1124, 1138 (9th Cir. 2001). To prove intentional discrimination, the plaintiffs must show defendants acted with "deliberate indifference," which "requires both some form of notice . . . and the opportunity to conform to statutory dictates." *Id.* at 1139 (quoting *City of Canton v. Harris*, 489 U.S. 378, 389 (1989) (O'Connor, J., concurring)) (cleaned up). The plaintiffs must identify "specific reasonable" and "necessary" accommodations that the defendant failed to provide. *Id*. "When the plaintiff has alerted the public entity to his need for accommodation (or where the need for accommodation is obvious, or required by statute or regulation), the public entity is on notice that an accommodation is required, and the plaintiff has satisfied the first element of the deliberate indifference test." *Id*.

"[D]eliberate indifference does not occur where a duty to act may simply have been overlooked." *Id*. "Rather, in order to meet the second element of the deliberate indifference test, a failure to act must be a result of conduct that is more than negligent, and involves an element of deliberateness." *Id*.

Here, in his several filings, the plaintiff alleged that he told jail personnel about his medical needs and disabilities and his need for an accommodation, and he asked for his mandated phone calls to try to get his medication.[18] Again, liberally construing his pleadings, he has alleged enough for service.

---

[18] Compl. – ECF No. 1 at 3, 6.

To the extent that he asserts an ADA claim against individual defendants in their individual capacities, those claims are barred by the ADA. *See, e.g.*, *Mitchell v. Kim*, No. 20-CV-04114-YGR (PR), 2021 WL 148241, at *4 (N.D. Cal. Jan. 15, 2021) ("Title II of the ADA does not provide for suit against a public official acting in his individual capacity."); *Minkley v. Eureka City Schs.*, No. 17-CV-3241-PJH, 2017 WL 4355049, at *6 (N.D. Cal. Sept. 29, 2017) ("There is no individual liability for damages under the ADA . . . ."). But this does not preclude service. He names entity defendants and complains about what happened at the jail. "Public entities" under the statute include any state or local government or any department, agency, special-purpose district or other instrumentality of a state or local government. 42 U.S.C. § 12131(1)(A)–(B). "The ADA's broad language brings within its scope anything a public entity does." *Lee*, 250 F.3d at 691 (cleaned up). "This includes programs or services provided at jails, prisons, and any other custodial or correctional institution." *Id.* (cleaned up). Title II applies to arrests, including when the police fail to reasonably accommodate a disability during an arrest. *Sheehan*, 743 F.3d at 1232–33, *rev'd in part on other grounds*, 135 S. Ct. at 1768–69 (leaving open the questions of whether Title II applies to arrests and whether a public entity can be vicariously liable for damages for the purposeful or deliberate conduct of its employees).

### 2. Medical Care

A pretrial detainee's claim arises under the Fourteenth Amendment's Due Process Clause and is governed by an objective deliberate-indifference standard rather than the subjective one that applies to a convicted prisoner's claim.

> [T]he elements of a pretrial detainee's medical care claim against an individual defendant under the due process clause of the Fourteenth Amendment are: (i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved — making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018). For the third element, the

defendant's conduct must be objectively unreasonable, "a test that will necessarily turn on the facts and circumstances of each particular case." *Id.* (cleaned up). "[T]he plaintiff must prove more than negligence but less than subjective intent — something akin to reckless disregard." *Id.* (cleaned up).

Liberally construed, the plaintiff alleges that he told jail staff about his medical issues, including his need for his medications and the distress he was experiencing (including heart palpitations and a migraine headache), and they ignored him. This gives notice of the claims, at least enough for service. Also, to the extent that the plaintiff does not provide the names of the individuals who allegedly denied him ADA-compliant accommodation, that does not preclude service. The plaintiff described his interactions with jail personnel, and he named Doe defendants who presumably can be identified through discovery (if the case goes forward). Complaints routinely identify Doe defendants, and courts allow amendment (and relating back to the filing of the complaint) if the plaintiffs identify the Doe defendants through discovery. *See, e.g.*, *Crowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013) (discussing the liberal rules favoring amendment, especially for pro se litigants, including in the context of allowing amendment to name individual defendants). Moreover, with some regularity, plaintiffs cannot name the person who allegedly harmed them, but they can describe what happened. The court authorizes service.

### 3. Denial of Phone Calls

Denial of telephone access for a pretrial detainee can violate the Due Process Clause of the Fourteenth Amendment. *Halvorsen v. Baird*, 146 F.3d 680, 689 (9th Cir. 1998) ("[P]art of the process due to a person if his liberty is taken is the opportunity to communicate with someone outside the institution where he is held, at a time and in a manner consistent with practical management of booking and confinement procedures and institutional security and order."). The inquiry turns on "whether punitive intent can be inferred from the nature of the restriction" on telephone access, which in turns depends on "'whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether [the restriction] appears excessive in relation to the alternative purpose assigned [to it].'" *Valdez v. Rosenbaum*, 302 F.3d 1039, 1045–47 (9th Cir. 2002) (quoting *Bell v. Wolfish*, 441 U.S. 520, 539 (1979)).

ORDER – No. 22-cv-04652-LB 9

Here, it is plausible that the alleged denial of telephone access for the plaintiff's eight-hour detention amounted to punishment. *Halvorsen*, 146 F.3d at 690 (a "six hour confinement cannot be held too short, as a matter of law, to entitle [a pretrial detainee] to communicate"); *Valdez*, 302 F.3d at 1046 (no punitive intent behind a restriction on telephone access where the restriction was in place only for the amount of time necessary to prevent the detainee, who was "suspected of being the organizer of a large-scale drug-smuggling conspiracy," from calling his co-conspirators, who were "still at large and had recently been indicted when the restriction was put in place").

Also, California gives arrestees (persons detained in custody post-arrest and pre-arraignment) the right to place three telephone call "[i]mmediately upon being booked and, except where physically impossible, no later than three hours after arrest." Cal. Penal Code § 851.5(a)(1).[19] This state-created right is one of "real substance" entitled to constitutional due-process protections. *Carlo v. City of Chino*, 105 F.3d 493, 500 (9th Cir. 1997).

The complaint's allegations are sufficient to allow service.

### 4. Intentional Infliction of Emotional Distress

"No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act (as defined in section 2246 of Title 18)." 42 U.S.C. § 1997e(e). "As used in this section, the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." *Id.* § 1997e(h). Section 1997e(e)'s bar is a permissible restriction on prisoners' ability to recover damages under 42 U.S.C. § 1983 and does not violate equal-protection or separation-of-powers doctrine. *Zehner v. Trigg*, 133 F.3d 459, 461–64 (7th Cir. 1997). The qualifying physical injury must be more than de minimis, but need not be significant. *Oliver v. Keller*, 289 F.3d 623, 627–29 (9th Cir. 2002).

---

[19] *Id.* at 4–5.

Given that the other claims are enough to allow service, and given some of the case law about the interplay between actual injury and emotional injury, the court allows service for this claim.

**5. Potential Deficiencies**

The court thinks that it has captured the crux of the plaintiff's claims in this order. But he names other defendants, and he references other statutes. The court thinks that the plaintiff does not necessarily mean to sue those defendants or invoke the statutes but addresses the issues in this section. If the plaintiff wants to add allegations in support of claims against the defendants or under the statutes, he may submit a supplemental filing by October 10, 2022.

First, the plaintiff apparently does not know the names of the correctional staff who allegedly ignored his medical issues. That is fine: he named Doe defendants, as described above. But if he names individuals (as he did by naming four defendants in the caption of his motion for a hearing at ECF No. 10, as summarized in the Statement), then he must say what they did. Because he did not name them in the complaint at ECF No. 1, the court does not deem them defendants. If the plaintiff wants to say what they did, he can do so in the supplemental filing to try to satisfy the requirements of notice pleading. "[A] plaintiff's allegations must 'provide sufficient notice to all of the [d]efendants as to the nature of the claims being asserted against them, including what conduct is at issue." *Adobe Sys., Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (cleaned up). "As a general rule, when a pleading fails to allege what role each [d]efendant played in the alleged harm, this makes it exceedingly difficult, if not impossible, for individual [d]efendants to respond to [the] [p]laintiffs' allegations." *Id.* (cleaned up); *Karkanen v. California*, No. 17-cv-06967-YGR, 2018 WL 3820916, at *7 (N.D. Cal. Aug. 10, 2018) (dismissing complaint where the plaintiff "repeatedly lump[ed] 'defendants' together in her allegations" because "a complaint which lumps together multiple defendants in one broad allegation fails to satisfy the notice requirement of Rule 8(a)(2)") (collecting cases) (cleaned up).

Second, in addition to Doe defendants, the plaintiff named the people of Sonoma County and all staff at the detention center. The court assumes that he did that to be careful. But it is

unnecessarily broad: his naming of Doe defendants is enough, and only persons or entities that violated his rights are responsible.

Third, the plaintiff named the State of California because it supervises the jails, noting that this issue was "unknown at this time and [he had] no time to research it."[20] Liability against the state does not seem likely, again because the plaintiff must sue those who actually harmed him at the jail, which is a County entity. (If later in the case, the plaintiff identifies others who may be responsible, he can raise the issue by moving to amend the complaint.) For now, the best way to position the case to move forward is to stick with the County.

Fourth, in discussing his ADA accommodation claim, the plaintiff alleges that the defendants "retaliated against [his] repeated ADA requests for his medications."[21] Under the ADA,

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a). To establish a prima facie claim of retaliation, the plaintiff must show that (1) he engaged in a protected activity, (2) an adverse action was taken against him, and (3) a causal connection exists between the protected activity and the adverse action. *Pardi v. Kaiser Permanente Hosp. Inc.*, 389 F.3d 840, 849 (9th Cir. 2004). To establish the requisite "causal connection," the plaintiff must show that but for the protected activity, the adverse action would not have been taken. *Doan v. San Ramon Valley Sch. Dist.*, No. C 13-03866 CRB, 2014 WL 296861, at *3 & n.4 (N.D. Cal. Jan. 27, 2014). The plaintiff does not allege facts about retaliation, probably because he did not intend to allege an ADA retaliation claim.

Fifth, the plaintiff references 42 U.S.C. § 1985.[22] Section 1985(3) provides a civil remedy for conspiracies to deprive a person or class of persons of equal protection of the laws or equal

---

[20] *Id.* at 1.
[21] *Id.* at 3.
[22] *Id.* at 3, 6.

privileges and immunities. 42 U.S.C. § 1985(3); *Griffin v. Breckenridge*, 403 U.S. 88, 101–02 (1971). To state a claim under § 1985(3), a plaintiff must allege the following:

> (1) [A] conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Bhd. of Carpenters & Joiners of Am. v. Scott*, 463 U.S. 825, 828–29 (1983). The plaintiff alleges no facts to support the existence of a conspiracy, either under § 1985(3) or § 1983. *See, e.g.*, *Nelson v. Horel*, No. C 07-4094 CRB (PR), 2008 WL 152219, at *2 (N.D. Cal. Jan. 9, 2008) ("Conclusory allegations of a conspiracy which are not supported by material facts are insufficient to state a claim under § 1983.") (citing *Woodrum v. Woodward Cnty.*, 866 F.2d 1121, 1126 (9th Cir. 1989)). Again, the court thinks the plaintiff was covering his bases and does not mean to plead a conspiracy: his complaints are captured in the claims that the court has identified.

Sixth, the plaintiff references 42 U.S.C. § 1986.[23] "Section 1986 imposes liability on every person who knows of an impending violation of section 1985 but neglects or refuses to prevent the violation. A claim can be stated under section 1986 only if the complaint contains a valid claim under section 1985." *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988), *abrogated on other grounds as recognized in Meyer v. San Francisco Pub. Libr.*, No. 17-CV-02278-MEJ, 2017 WL 3453364 (N.D. Cal. Aug. 11, 2017). Without a plausible § 1985 claim, the complaint does not have a plausible § 1986 claim.

Seventh, in an exhibit in support of his motion for a TRO, the plaintiff alleges that the defendants "us[ed] extreme force upon [him] and lock[ed] him alone into maximum security."[24] The Due Process Clause of Fourteenth Amendment protects pretrial detainees "from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). "[T]he Fourth Amendment sets the 'applicable constitutional limitations' for considering claims of

---

[23] *Id.*

[24] Exs. to Mot. for TRO – ECF No. 7 at 3.

excessive force during pretrial detention." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1197 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016). To prove an excessive-force claim under § 1983, a pretrial detainee must show "only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley*, 576 U.S. at 396–97. Again, the court thinks the plaintiff generally is raising ADA and medical-care claims. But if he is alleging excessive force, he must describe any force that was used on him.

Eighth, a related point is that the defendants allegedly "lock[ed] [the plaintiff] alone into maximum security."[25] Under the Due Process Clause of the Fourteenth Amendment, the state may "subject [a pretrial detainee] to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment or otherwise violate the Constitution." *Bell*, 441 U.S. at 536–37. If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment. *Id.* at 539. But if a restriction or condition is not reasonably related to a legitimate goal, *i.e.* if it is arbitrary or purposeless, a court may infer that the purpose of the governmental action is punishment. *See id.* at 561–62.

"Absent a showing of an expressed intent to punish on the part of detention facility officials, [the] determination generally will turn on 'whether an alternative purpose to which the restriction may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it.'" *Hiser v. Nevada Dep't of Corr.*, 708 F. App'x 297, 298 (9th Cir. 2017) (cleaned up) (quoting *Bell*, 441 U.S. at 538–39).

Given that this issue was raised in an exhibit to a motion asking for a hearing, and given that the plaintiff is challenging his medical care, the court assumes that the plaintiff is not raising a separate claim about other conditions of confinement but flags the issue for the plaintiff's consideration. *Id.* (pretrial detainee's allegation that "prison officials placed him in solitary confinement as punishment for complaining that his transfer to state prison violated a state court

---

[25] *Id.*

order" was sufficient to "raise a plausible inference that the prison officials who placed [him] in solitary confinement violated [his] due process rights as a pretrial detainee").

Ninth, the court flags potential issues about the two non-Doe defendants named in the complaint at ECF No. 1: Sonoma County Sheriff Mark Essick and the County.

"A defendant [such as the Sheriff] may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (cleaned up).

Local governments (such as the County) can be sued under § 1983 if they maintain a custom, practice, or policy that amounts to deliberate indifference to a plaintiff's constitutional rights, and the policy results in a violation of a plaintiff's constitutional rights. *Monell v. Dep't of Social Servs. of N.Y.*, 436 U.S. 658, 690–91 (1978). There are three ways to show a policy or custom:

> (1) [B]y showing a longstanding practice or custom which constitutes the standard operating procedure of the local government entity; (2) by showing that the decision-making official was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (3) by showing that an official with final policymaking authority either delegated that authority to, or ratified the decision of, a subordinate.

*Menotti v. City of Seattle*, 409 F.3d 1113, 1147 (9th Cir. 2005) (cleaned up). The practice or custom must be more than "random acts or isolated events" and instead must be a "permanent and well-settled practice." *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443–44 (9th Cir. 1989) (cleaned up), *overruled on other grounds by Bull v. City and Cnty. of San Francisco*, 595 F.3d 964 (9th Cir. 2010). Thus, "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985).

Here, the plaintiff does not seemingly advance supervisory liability claims against the Sheriff or a *Monell* claim against the County. He does not, for example, allege a policy or practice that caused the violations. *See, e.g.*, *Henderson v. Cnty. of Santa Cruz*, No. 14-cv-03544-RMW, 2015 WL 225429, at *6 (N.D. Cal. Jan. 16, 2015). Liberally construing his complaint, the court assumes

that he named the Sheriff and County as entity defendants for the ADA claim and, for the other claims, because he does not know the names of the Doe defendants.

If the plaintiff wants to submit a supplemental filing to address the issues in this section, he may do so by October 10, 2022. (The court recognizes that he suggested that he wanted to do so, explicitly in his initial complaint[26] and as manifested in his subsequent filings.)

**6. Requests for Relief**

The plaintiff asks for relief that is expansive: closing the jails for example. Because the plaintiff has claims for damages, the scope of relief — even if not viable — does not preclude service. The court thus does not address the scope of relief in this order (including the request to refer the alleged violation of California Penal Code § 851.5 to the U.S. Attorney's Office).

The plaintiff's other non-monetary requests are about preservation of the videos from the jail's security cameras. The plaintiff notified the jail of its preservation obligation,[27] and service here provides notice too. *Apple Inc. v. Samsung Elecs. Co.*, 888 F. Supp. 2d 976, 990–91 (N.D. Cal. 2012) ("[T]rial courts in this Circuit generally agree that, as soon as a potential claim is identified, a litigant is under a duty to preserve evidence which it knows or reasonably should know is relevant to the action.") (cleaned up); *Matthew Enter., Inc. v. Chrysler Grp. LLC*, No. 13-CV-04236-BLF, 2016 WL 2957133, at *3 (N.D. Cal. May 23, 2016) ("[T]he duty to preserve documents attached when [the party was] sent a litigation threat letter. . . ."); *In re Napster, Inc. Copyright Litig.*, 462 F. Supp. 2d 1060, 1067 (N.D. Cal. 2006) (service with a lawsuit provides notice of the claim). The court defers consideration of any injunction to preserve the discovery status quo until the defendants appear.

*     *     *

In sum, the court authorizes service of the complaint.

---

[26] Compl. – ECF No. 1 at 8 ("[T]his paperwork is incomplete and must be amended soon. . . .").

[27] Preservation Notice – ECF No. 10-1 at 14 (requesting that all video records from August 8, 2022, be preserved "for a pending investigation").

## CONCLUSION

The court previously granted the motion to proceed in forma pauperis and deferred the issue of service.[28] The court now directs the Clerk of Court to issue the summons for the Sonoma County defendants named in ECF No. 1. The court also directs the U.S. Marshal for the Northern District of California to serve, without prepayment of fees, a copy of the summons and complaint, any amendments or attachments, the plaintiff's affidavit, and this order on those defendants.

The court has identified some issues in the plaintiff's complaint. If the plaintiff wants to address the issues, he may file a single filing by October 10, 2022.

The rulings in this order do not preclude a motion to dismiss. The court concludes merely that the plaintiff pleaded sufficient factual allegations to survive the court's frivolousness review and to show that he may be entitled to some relief.

**IT IS SO ORDERED.**

Dated: September 19, 2022

LAUREL BEELER
United States Magistrate Judge

---

[28] Order – ECF No. 6.